UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JENNIFER SHAWGO, an individual; JENNIFER SHAWGO BC LLC, a Minnesota limited liability company; MOLLY BJORNLIE, an individual; MOLLY BJORNLIE, LLC, a Minnesota limited liability company; AYESHA DAWLEY, an individual; DAWLEY, LLC, a Minnesota limited liability company; and CAITY PIKE, an individual, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

COUNTER BRANDS, LLC, a California limited liability company doing business as Beautycounter; THE CARLYLE GROUP INC., a Delaware corporation; COUNTER BRANDS, INC., a Delaware corporation doing business as Beautycounter; G2G NEWCO, INC., a Delaware corporation doing business as Beautycounter; and SUSAN GREGG RENFREW, an individual,

Defendants.

Case No. 24-CV-0556 (PJS/DTS)

ORDER

Pamela Abbate Dattilo, Anne St. Amant, and Aaron Mark Bostrom, ECKLAND & BLANDO LLP; and Samuel W. Diehl and Tara Kennedy, CROSSCASTLE PLLC, for plaintiffs.

Jennifer Shawgo and her fellow plaintiffs sold beauty products—and, more importantly, recruited others to sell beauty products—through defendants' multi-level

marketing business ("MLM"). Plaintiffs initiated this action in 2024, bringing a host of claims arising out of the termination of their relationships with defendants. On March 31, 2025, this Court dismissed all claims against all defendants save for those against Counter Brands, LLC d/b/a Beautycounter ("Beautycounter"). *See generally* ECF No. 168. Beautycounter is defunct, but plaintiffs nevertheless seek to have a judgment entered against it.

This matter is before the Court on plaintiffs' renewed motion for a default judgment pursuant to Fed. R. Civ. P. 55. ECF No. 190. For the reasons that follow, the motion is granted as to the fraudulent-inducement claim (Count XII[1]) and otherwise denied without prejudice.

Beautycounter has been unrepresented and unresponsive in this matter since May 30, 2024. *See* ECF Nos. 36, 37. The Clerk of Court entered default against Beautycounter on August 26, 2024. ECF No. 108. On January 5, 2026, the Court held a hearing on plaintiffs' motion for default judgment, ECF No. 190, and described several reasons why the motion would be denied without prejudice, *see generally* ECF No. 186. On June 29, 2026, the Court held a hearing on the renewed motion. ECF No. 205 ("June Hr'g Tr."). During that hearing, the Court indicated that plaintiffs had established Beautycounter's liability on the fraudulent-inducement claim but needed to establish

---

[1]Count XII is inadvertently labeled as Count XI in the second amended complaint. *See* ECF No. 45 at 87–88.

damages. June Hr'g Tr. at 4–5, 16–17. Finally, on October 26, 2026, the Court held an evidentiary hearing regarding damages.[2] For the reasons described on the records of the June 29 and October 26 hearings and summarized below, plaintiffs have now met all of the requirements of Fed. R. Civ. P. 55 and therefore are entitled to a default judgment on Count XII.

## I. ANALYSIS

### *A. Fraudulent Inducement*

To recover on a fraudulent-inducement claim under Minnesota law (which applies to this claim, *see* ECF No. 199 at 29–30), a plaintiff must establish the following:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer[ed] pecuniary damage as a result of the reliance.

*Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007) (quoting *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 532 (Minn. 1986)); *see also Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 368 (Minn. 2009). The allegations in the complaint—which the Court must take as true, *see Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010)—sufficiently establish the first four elements. *See* Second Am. Compl.

[2] Plaintiffs served their supplemental briefs and supporting materials for both the June and October hearings on Beautycounter. *See* ECF Nos. 200, 216.

¶¶ 509–515, ECF No. 45; *see also* June Hr'g Tr. at 4–5. Only damages remain to be determined.

*B. Damages*

When the amount of damages sought on motion for a default judgment is not a sum certain—but is instead "indefinite or uncertain"—the alleged damages must be proven "to a reasonable degree of certainty." *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001). In making this determination, however, a judge must not act as an advocate for the defaulting defendant by inventing rebuttal arguments or conducting cross-examination. *Cf. Warner v. Transamerica Ins. Co.*, 739 F.2d 1347, 1351 (8th Cir. 1984) ("A trial judge should never assume the role of advocate." (citation omitted)); *Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095, 1113 (D.C. Cir. 2019) ("It is not the responsibility of courts to act *sue sponte* . . . on behalf of defendants who do not appear to defend actions against them."). The judge remains a judge.

Here, plaintiffs seek past and future lost-profit damages.[3] Plaintiffs argue that, but for being fraudulently induced to stay with Beautycounter, each plaintiff would have (1) left Beautycounter and moved to a competing MLM; (2) retained a vast

[3]Plaintiffs have established their general entitlement to lost-profit damages—as opposed to out-of-pocket damages—by a reasonable degree of certainty. *See* ECF No. 209 at 14–17; *see also B.F. Goodrich Co. v. Mesabi Tire Co.*, 430 N.W.2d 180, 184 (Minn. 1988)). Furthermore, in the absence of a defendant, the Court need not consider mitigation of damages, which is an affirmative defense. *See* ECF No. 209 at 12 n.3 (citing *Mod. Leasing, Inc. of Iowa v. Falgon Mfg. of Cal., Inc.*, 888 F.2d 59, 62 (8th Cir. 1989)).

majority of the revenue from her "downline" network; and (3) found success similar to the success that she achieved with Beautycounter. *See* ECF No. 210 ¶ 9.

To support this theory, plaintiffs rely on their own affidavits, as well as on the testimony and report of expert Greg Siracusa, a certified professional accountant ("CPA") and business consultant. *See generally* ECF No. 210. Siracusa is a well-qualified expert: In addition to being a CPA, he has two master's degrees, and he founded and runs his own firm specializing in accounting, finance, and consulting. ECF No. 210-1 at 6. After being retained in this case, Siracusa compiled a report calculating plaintiffs' lost profits. ECF No. 193-1. Following the June hearing, Siracusa updated his findings to address concerns expressed by the Court at the hearing. *See generally* ECF No. 210. He explained his revised calculations at length during the October hearing.

Siracusa based his calculations on the average profits each plaintiff made at Beautycounter from 2019 to 2021. Siracusa chose this time frame because it "represent[s] the last three full years in which [p]laintiffs operated their businesses under normal conditions prior to" the alleged fraudulent inducement. ECF No. 210 ¶ 5.

To address the Court's concern that plaintiffs were likely to lose some revenue just by virtue of moving their businesses to a competitor, Siracusa then subtracted 10% for "transition loss"—that is, attrition—from each average. *Id.* ¶¶ 8–21; *see also* June Hr'g Tr. at 18–22 (describing the need to consider a "ramp-up" period). At the hearing,

Siracusa defended a 90% revenue-retention rate as supportable (and perhaps even conservative) for high earners such as plaintiffs. Siracusa explained that even if a plaintiff retained only 80% (or perhaps only 50–60%[4]) of her downline *personnel*, she would likely retain 90% or more of her downline *revenue*. *See* ECF No. 210 ¶ 21. Siracusa grounded this conclusion in the interviews he conducted with plaintiffs and in literature about income distribution within MLMs. *See id.* ¶¶ 16–21; ECF Nos. 218-1–218-4.[5]

Next, Siracusa projected plaintiffs' income over eight years—"roughly how long most [p]laintiffs ran successful Beautycounter businesses." ECF Nos. 209 at 20, 210 ¶ 6.[6] In doing so, Siracusa applied an inflation rate for each year but did not factor in any growth. Siracusa also subtracted any commissions a plaintiff earned from Beautycounter in an accounted-for year. Shawgo, Dawley, and Pike earned profits in 2022, as did Molly Bjornlie in 2022 and 2023. *See* ECF No. 218-5 at 2–5.

---

[4]Plaintiff Ayesha Dawley estimates that only 50 to 60% of her team would have followed her; however, she still believes that "most of her revenue would have been preserved" because the team members who followed her would have been "her most engaged and highest-earning." ECF Nos. 210 ¶ 17, 211 ¶¶ 8–9, 11.

[5]Siracusa also submitted alternative calculations based on a 20% attrition rate, *see* ECF No. 218-6, but the Court finds that the primary calculation based on a 10% attrition rate is supported to a reasonable degree of certainty.

[6]Although plaintiff Caity Pike joined Beautycounter in 2017 and was terminated about five years later, Siracusa still projected her lost profits for eight years because "high-achieving leaders like [Pike]" generally stayed for around eight years. ECF No. 212 ¶ 15.

Siracusa then made four more adjustments. First, he subtracted 10% for "estimated business expenses." *Id.* Second, he reduced each figure to account for estimated self-employment taxes. *Id.* Third, he applied Minnesota's prejudgment-interest rate to the net profits for the time period between 2022 and June 29, 2026—the anticipated default date.[7] ECF No. 210 ¶ 7. Fourth, Siracusa applied a 12% present-value discount to future years based on the June 29, 2026 default date. *Id.*

These calculations result in the following cumulative, net-lost-profit figures:

| Plaintiff | Lost Profits (10% Attrition) |
|---|---|
| Shawgo | $1,515,519 |
| Bjornlie | $1,327,839 |
| Dawley | $1,276,146 |
| Pike | $151,378 |

Having heard Siracusa's testimony and reviewed the evidence, the Court is satisfied that Siracusa aimed to assert not the highest-possible damages figure, but rather a reasonable one. He used conservative estimates and revised his methodology when necessary. He applied a 10% attrition rate, despite testifying that a rate of 5% or less would have been defensible. He declined to factor in any actual growth, but

[7]Siracusa also calculated the cumulative figures using California's prejudgment-interest rate, but that calculation is irrelevant for present purposes.

instead accounted only for inflation. And he further reduced plaintiffs' projected lost profits to account for business expenses and taxes.

It is possible that a defendant that was not in default would expose problems with Siracusa's work on cross-examination or through the submission of rebuttal expert reports. Again, though, it is not the Court's responsibility to advocate on behalf of a defaulting defendant. Accordingly, the Court finds that Siracusa's damages calculation is supported to a reasonable degree of certainty, and the Court awards the following damages:

| **Plaintiff** | **Lost Profits (10% Attrition)** | **Emotional Distress Damages**[8] | **Prejudgment Interest on Emotional Distress** | **Total** |
|---|---|---|---|---|
| Shawgo | $1,515,519 | $250,000 | $75,136.99 | $1,840,655.99 |
| Bjornlie | $1,327,839 | $250,000 | $75,136.99 | $1,652,975.99 |
| Dawley | $1,276,146 | $250,000 | $75,136.99 | $1,601,282.99 |
| Pike | $151,378 | $250,000 | $75,136.99 | $476,514.99 |

ORDER

Based on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

[8]The Court determined at the June hearing that each plaintiff could recover emotional-distress damages in the amount of $250,000. June Hr'g Tr. at 30.

1. Plaintiffs' renewed motion for default judgment [ECF No. 190] is GRANTED as to plaintiffs' claim for fraudulent inducement (Count XII). Liability on that claim is as follows:

   a. Defendant Counter Brands, LLC d/b/a Beautycounter is liable to plaintiffs Jennifer Shawgo and Jennifer Shawgo BC LLC in the amount of $1,840,655.99.

   b. Defendant Counter Brands, LLC d/b/a Beautycounter is liable to plaintiffs Molly Bjornlie and Molly Bjornlie, LLC in the amount of $1,652,975.99.

   c. Defendant Counter Brands, LLC d/b/a Beautycounter is liable to plaintiffs Ayesha Dawley and Dawley, LLC in the amount of $1,601,282.99.

   d. Defendant Counter Brands, LLC d/b/a Beautycounter is liable to plaintiff Caity Pike in the amount of $476,514.99.

2. Plaintiffs' renewed motion for default judgment [ECF No. 190] is DENIED WITHOUT PREJUDICE as to all other claims, and those claims are DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: November 6, 2026

/s/ Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge